IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
October 6, 2020 Session

**STATE OF TENNESSEE v. MADARYL DEWAYNE HAMPTON**

**Appeal from the Circuit Court for Madison County**
**No. 18-739    Donald H. Allen, Judge**

_____

**No. W2019-01551-CCA-R3-CD**
_____

The Defendant-Appellant, Madaryl Hampton, was indicted by the Madison County Grand Jury with multiple counts of drug and weapon related offenses, all stemming from a single encounter with the Jackson Police Department (JPD). These counts were severed into two trials, one dealing with the drug related offenses and the other the weapon related offenses. In the first trial, the Defendant was convicted of two counts of simple possession of marijuana. In his second trial, the Defendant was convicted of four counts of being a felon in possession of a weapon. The trial court merged each of these counts and sentenced the Defendant as a Range II offender to twenty years' imprisonment for the weapon offenses to be served consecutively to eleven months and twenty-nine days' imprisonment for the possession of marijuana convictions. While the issues presented in this appeal as of right involve facts from the Defendant's first trial, the Defendant challenges only the felon in possession of a weapon convictions in arguing that: (1) the trial court committed plain error in allowing the State to admit evidence that the Defendant was in possession of marijuana, digital scales, and cash; (2) the trial court committed plain error in allowing the State to comment on the credibility of the Defendant and the witnesses during closing arguments; and (3) the evidence is insufficient to sustain the Defendant's convictions. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and J. ROSS DYER, J., joined.

Jessica F. Butler, Assistant Public Defender-Appellate Division, Franklin, Tennessee, for the Defendant-Appellant, Madaryl Dewayne Hampton.

Herbert H. Slatery III, Attorney General and Reporter; Katharine K. Decker, Assistant Attorney General; Jody Pickens, District Attorney General; and Bradley F. Champine, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

Because it will be relevant to the disposition of the issues raised in this appeal, it is necessary to detail the Defendant's indictments in full and to explain how they were disposed of in this case. In his first trial, although the Defendant was charged with alternative counts of possession of marijuana with intent to sell or deliver in counts one and two, he was convicted of the lesser-included offenses of simple possession of marijuana. He was also acquitted of unlawful possession of a firearm with intent to go armed during the commission of a dangerous offense (possession of marijuana with intent to sell/deliver) in counts three and four. Counts five through ten, alternative charges of unlawful possession of a firearm during the commission of a dangerous felony (possession of marijuana with intent to sell/deliver) as well as unlawful possession of a firearm during the commission of a dangerous felony (possession of marijuana with intent to sell/deliver) by a previously convicted felon and count fifteen, tampering with evidence, were dismissed by the State. The record does not contain a transcript detailing the reasoning supporting the severance of the offenses or the respective parties' position on the action taken by the trial court in doing so. At sentencing in the instant case, however, the trial court noted that it had previously severed the counts herein from the above listed counts because it "was appropriate that a jury who was trying to determine whether or not [the Defendant] was in possession of marijuana with intent to sell or deliver, whether or not he was in possession of a firearm during the commission of a dangerous felony . . . those charges should be tried separately from the charges where he was actually indicted for being a convicted felon in possession of a firearm."

In regard to the remaining convicted felon in possession of a firearm offenses in counts eleven through fourteen, the following proof was adduced at the Defendant's May 9, 2019 trial. JPD Officer Terry Troutt testified that he arrested the Defendant for being a felon in possession of a firearm on January 20, 2018. He responded to an apartment complex at 216 Roosevelt Parkway around 8:50 that night, and, even though it was dark outside when he arrived, he said that the apartment complex was "well-lit." He described the area as a "high crime area." Officer Troutt responded to the apartment complex that night because he "had been given information about an individual with a warrant." Although he could not remember the name of the person who had a warrant, he had a description and a picture of the person who was the subject of the warrant. He testified that, when he arrived at the apartment complex, he was in a marked JPD patrol vehicle, and an officer whom he was training accompanied him.

Officer Troutt saw a group of five to ten people standing around when he arrived, but he was not able to make out any of their faces at that time. He saw the Defendant, who he believed matched the description of the person that he was looking for, but he could not

see his face clearly at that time. Officer Troutt followed the Defendant to get a closer look at him, but he said that he had not activated his blue lights or drawn his weapon at that point. He also did not "give[] any commands" to the Defendant or any of the individuals standing in the group. As Officer Troutt approached the Defendant, the Defendant began walking faster, and Officer Troutt lost sight of the Defendant as he rounded the corner of the "D" building. Officer Troutt went around the other side of the building, and he caught up with the Defendant on the "south side" of the "E" building. He stated that he had still not seen the Defendant's face at that point, but he said that the Defendant was wearing "bulky coveralls." As Officer Troutt "closed the distance" between himself and the Defendant, he said he still had not issued any commands to the Defendant and the Defendant had not looked back at him."

Officer Troutt saw the Defendant walking on the sidewalk, which was surrounded by a grassy area. He testified that he could see this area because it was well-lit, and he did not see anything in that area when he "reestablished contact with [the Defendant]." At that point, Officer Troutt saw the Defendant moving his arms "as if he was . . . inside his jacket getting something from the front of his body[,]" which made him believe that the Defendant was "retrieving an item" from his jacket. Officer Troutt then saw the Defendant make a "throwing motion" to the front with his right arm, and he identified the item thrown as a black handgun. He agreed that he observed the gun "travel through the air and onto the ground." He said that the gun landed in the grassy area near the streetlight and that the ground was wet and muddy that night. Officer Troutt stated that the Defendant also threw a clear plastic bag to his left side, and he suspected that the bag contained marijuana. Based on these observations, Officer Troutt detained the Defendant and placed him under arrest, at which point he saw the Defendant's face and realized that the Defendant was not the subject of the arrest warrant.

After he arrested the Defendant, Officer Troutt searched the area and found the handgun and bag of marijuana where he saw the Defendant throw these items. Officer Kenneth Shell photographed these items and testified that he used the flash on the camera to illuminate them. Officer Troutt confirmed that one of the photographs of the firearm showed that it was covered with wet mud, which was consistent with the weather conditions that night. Officer Troutt also identified the firearm that he recovered, as well as the magazine and the ammunition, all of which were admitted as exhibits at trial. He stated that the firearm was loaded when it was recovered, and it had five rounds in it. Officer Troutt also searched the Defendant at the scene and recovered $470 from his person, which was broken down into one $100 bill, fifteen $20 bills, five $10 bills, and four $5 bills. A set of black digital scales was recovered from the Defendant when he was searched at the jail, and Officer Troutt stated that there was marijuana residue on the scales. Officer Troutt photographed these items, and they were entered into evidence. After collecting all of the evidence, Officer Troutt researched the Defendant's criminal history

and determined that the Defendant was a convicted felon, and, therefore, not able to legally possess a firearm. The parties stipulated to the following: "[O]n the day that [the Defendant] was arrested, January 20 of 2018, he did on each of the counts of the indictment have a prior felony conviction that qualifies as a felony conviction for attempted use of force, violence, or a deadly weapon."

On cross-examination, Officer Troutt stated that the apartment complex that he reported to was sometimes referred to as "Parkway East," and he said that he patrolled that area frequently at that time. He received the tip about the person he was searching for from a confidential informant. He did not know the Defendant before that night. He agreed that if someone is not wanted by the police, he or she was free to walk away from a police officer. Officer Troutt could not remember if the Defendant was talking on his cell phone when he arrived. He agreed that the area could "potentially get pretty dark" and that he could not see the Defendant clearly because of how far away he was from him. Defense counsel refreshed Officer Troutt's memory of his testimony from a prior hearing, in which he said that he could see clearly that night, but he clarified that he could not see the Defendant's facial features. He said that the Defendant matched the description of the person he was looking for in build and in the type of clothing that he was wearing. Officer Troutt also agreed that he testified in a prior hearing that the Defendant looked back at him when Officer Troutt arrived at the scene. He stated that he did not have a body camera on that night, and he agreed that the Defendant never ran away from him.

Officer Troutt said that another officer was in the area when he saw the Defendant throw the firearm. He stated that he never called out to the Defendant or identified himself as police when he was following the Defendant. He believed that the Defendant was wearing coveralls based on the "bulkiness" of his clothing. He stated that the Defendant was the only person who he arrested at the scene that night. He agreed that the Defendant's "female friend" showed up at some point that night and that the Defendant may have called her at some point. He could not recall whether the Defendant was wearing gloves. On redirect examination, he said that he was "positive that [he] saw [the Defendant] throw [the firearm and the plastic bag] down on the ground." He also said that he could clearly see those items on the ground. Finally, Officer Troutt said there was no one else in the area at the time he arrested the Defendant.

The Defendant, age 42, testified that he had a prior criminal history consisting of convictions of aggravated burglary and passing worthless checks. He agreed that he was outside the Parkway East Apartment Complex on the night of the offense with 10 or more other men. He said that he lived approximately 30 to 40 yards away from his arrest location. Before the police arrived, the Defendant received a phone call from his wife, answered his phone, and began to walk away from the crowd. While he was walking away, one of the other men yelled the police were pulling into the parking lot and the crowd of

men scattered. The Defendant said he did not run away because he had no reason to do so. The Defendant testified that he noticed an officer following him. The Defendant said that after walking some distance and around several buildings, the officer told the Defendant to "Stop. You got a warrant. Get off your phone.'" The Defendant eventually complied. He testified that after the officers determined that he was not the person with the arrest warrant and that he did not have any outstanding warrants, the officers went to look "generally [in the] grassy area" because one of the officers said the Defendant may have thrown something. The Defendant implied that he did not walk by the area the officers were searching, and he was not arrested in the area where the gun and marijuana were found. The Defendant denied throwing a gun or marijuana to the ground and claimed the officer mistook his phone for a gun. The Defendant theorized the gun belonged to and was thrown by one of the other men in the crowd as they were running from the police. He insisted that had he thrown the gun to the ground his fingerprints would have been on it because he was not wearing gloves that night.

Based on the above proof, the jury convicted the Defendant, as charged, of four counts of being a convicted felon in possession of a firearm. At a later hearing, the trial court merged each count and imposed a sentence of twenty-four years' imprisonment. Following an unsuccessful motion for new trial challenging the sufficiency of the evidence only, the Defendant filed a timely notice of appeal. His case is now properly before this court for review.

## ANALYSIS

**I. Admissibility of Evidence.** The Defendant argues the trial court committed plain error in admitting evidence that, "at the time of his arrest, the Defendant was in possession of marijuana, digital scales, and cash—evidence that was both clearly irrelevant and highly prejudicial." He insists the State unfairly capitalized on this evidence in closing argument, confused the jury, and transformed the trial into a "highly inflammatory diatribe about whether [the Defendant] was involved in the sale of drugs." The Defendant argues further that the use of this evidence rendered the trial court's earlier decision to sever the drug and gun charges effectively meaningless. In response, the State contends the Defendant is not entitled to plain error relief because he has failed to establish that introduction of "the complained-of evidence breached a clear and unequivocal rule of law." The State points out that the Defendant is arguing that the trial court violated Tenn. Rule of Evid. 402, which provides that evidence is deemed inadmissible if it is not relevant. The State argues that the complained-of evidence, the marijuana, scales, and cash, made the Defendant's possession of the gun more probable than not under Rule 402 of the Tennessee Rules of Evidence.

The Defendant concedes that he failed to object to the admission of this evidence at trial and failed to include this issue in his motion for new trial. Accordingly, our review is

limited to plain error. Tenn. R. App. P. 36(a), (e). Under the plain error doctrine, "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. App. P. 36(b). In order for this court to find plain error,

> (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice."

State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). "It is the accused's burden to persuade an appellate court that the trial court committed plain error." State v. Bledsoe, 226 S.W.3d 349, 355 (Tenn. 2007) (citing U.S. v. Olano, 507 U.S. 725, 734 (1993)). "[T]he presence of all five factors must be established by the record before this Court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." Smith, 24 S.W.3d at 283. We evaluate the Defendant's claims of error with these principles in mind.

As an initial matter, we are neither satisfied that the record has clearly established what occurred in the trial court nor convinced that the Defendant has not waived this issue for tactical reasons. Although the Defendant insists "there was no conceivable tactical advantage to be gained by allowing the State to base its case on irrelevant evidence, nor was there any advantage to allowing the State to malign [the Defendant] with baseless claims of unproven criminal conduct," this statement largely ignores the fact that all of the Defendant's drug and firearm related offenses stem from the same criminal episode and were originally charged in a single indictment. See Tenn. R. Crim. P. 8(a)(2); Tenn. R. Crim. P. 8, Advisory Comm'n Comment; State v. Johnson, 342 S.W.3d 468, 473 (Tenn. 2011). Accordingly, central to the Defendant's argument on this issue is the severance in this case. This is problematic for several reasons. First, as we have previously noted, other than a comment by the trial court during sentencing, the record does not contain the circumstances surrounding the severance of the offenses. Secondly, given the posture of this case, we must presume the Defendant acceded to the severance, and we are not inclined to allow him to exploit that decision now on appeal. Tenn. R. Crim. P. 14(b)(2) (noting that in cases of mandatory joinder, when the defendant asks for a severance prior to trial, "the court shall grant a severance of offenses ... when the court finds a severance appropriate to promote a fair determination of the defendant's guilt or innocence of each offense."). Thirdly, while the Defendant implies that the trial court's severance of his cases somehow served as a bar to the admissibility of the complained of evidence, we disagree.

- 6 -

This Court has previously held that while not required, "the better procedure where, as here, the defendant is charged with offenses involving the use of violence and force and also charged with the status offense of unlawful possession of a firearm for having a similar prior felony conviction would be to bifurcate the proceedings and address the unlawful possession of a firearm charge separately." State v. Foust, 482 S.W.3d 20, 46-47 (Tenn. Crim. App. 2015) (internal citations omitted); State v. Anthony Olivo, No. W2019-00530-CCA-R3-CD, 2020 WL 2510533, at *7 (Tenn. Crim. App. May 15, 2020), appeal denied (Sept. 21, 2020) (affirming trial court's denial of bifurcation because prior drug-related felonies were dissimilar to the offenses on trial and the defendant was permitted to stipulate that he had been convicted of drug-related felonies and that he had been made aware it would be a felony to possess a firearm). Similarly, although not entirely clear from the record, we believe the purpose of bifurcation or severance in this case was to avoid any prejudice stemming from the Defendant's prior felony convictions. Accordingly, the trial court's action in bifurcating the offenses did not equate to a determination under Rules 401, 402, or 404(b) regarding the admissibility of other evidence.

In any case, the Defendant insists "the use of irrelevant evidence violated a clear and unequivocal rule of law and substantially prejudiced [his] right to a fair trial." He specifically argues that the admission of the testimony from Officer Troutt concerning the marijuana, digital scales, and cash was not relevant under Rules 401, 402, and 404(b) of the Tennessee Rules of Evidence. In resolving this issue, we recognize that upon considering the admissibility of evidence, the trial court must first determine whether the proffered evidence is relevant. State v. James, 81 S.W.3d 751, 757 (Tenn. 2002); State v. Sims, No. E2018-01268-CCA-R3-CD, 2020 WL 5088737, at *6 (Tenn. Crim. App. Aug. 28, 2020), appeal denied (Feb. 4, 2021). Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. "In other words, 'evidence is relevant if it helps the trier of fact resolve an issue of fact.'" James, 81 S.W. 3d at 757 (quoting Neil P. Cohen, et al., Tennessee Law of Evidence § 4.01[4], at 4-8 (4th ed. 2000)). Generally, relevant evidence is admissible, while irrelevant evidence is inadmissible. Tenn. R. Evid. 402. However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Tenn. R. Evid. 403. "Rule 403 is a rule of admissibility, and it places a heavy burden on the party seeking to exclude the evidence." James, 81 S.W.3d at 757.

Here, the Defendant stipulated to his status as a convicted felon; thus, the primary issue to be resolved by the jury was whether the Defendant was in possession of the firearm. We agree with the State's argument that the marijuana was admissible because it was thrown close in time to the firearm and gave credence to their theory that the Defendant

similarly possessed the firearm. Accordingly, because testimony about the Defendant throwing a bag of marijuana immediately after or close in time to when the Defendant was observed to throw the firearm aided the trier of fact in resolving whether he in fact possessed the firearm, we conclude that it was relevant. As for the cash and digital scales, which were recovered at a much later time, given the overwhelming proof of the Defendant's guilt on the narrow question of possession, that admission of the complained of evidence was harmless. Because the Defendant has failed to establish a either a breach of a clear and unequivocal rule of law or any error adversely effecting a substantial right, he is not entitled to relief under the plain error doctrine.

**II. Closing Argument.** The Defendant argues the trial court committed plain error in allowing the State to tell the jury five separate times that the officer's testimony was "credible" and that the Defendant's was "incredible." In response, the State contends that the Defendant failed to object during closing argument and has failed to establish plain error relief. We agree with the State.

Once again, the Defendant concedes that he failed to object to these comments in closing argument. Accordingly, as in the above issue, our review is for plain error. Tenn. R. App. P. 36(b); State v. Pack, 421 S.W.3d 629, 648 (Tenn. Crim. App. 2013) (holding that because the defendant failed to make a contemporaneous objection during closing arguments, he not only had to establish that the comments were improper but also that they constituted plain error). It is well recognized that a defendant's failure to object to a prosecutor's comments during closing argument rarely results in a reversal of the conviction. See United States v. Smith, 508 F.3d 861, 864 (8th Cir. 2007).

Prosecutorial misconduct does not constitute reversible error absent a showing that it has affected the outcome of the trial to the prejudice of the defendant. State v. Bane, 57 S.W.3d 411, 425 (Tenn. 2001) (citing Terry v. State, 46 S.W.3d 147, 156 (Tenn. 2001)). As applicable to this case, this court has recognized that it is improper conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant. See State v. Thornton, 10 S.W.3d 229, 235 (Tenn. Crim. App. 1999); Lackey v. State, 578 S.W.2d 101, 107 (Tenn. Crim. App. 1978); Tenn. Code of Prof'l Responsibility DR 7-106(c)(4); State v. Goltz, 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003) (citing AM. BAR ASS'N, STANDARDS RELATING TO THE PROSECUTION FUNCTION AND THE DEFENSE FUNCTION §§ 5.8-5.9 COMMENTARY (ABA PROJECT ON STANDARDS FOR CRIMINAL JUSTICE, APPROVED DRAFT 1971)). Whether a statement qualifies as misconduct often depends upon the specific terminology used. Thornton, 10 S.W.3d at 235 (citing United States v. Stulga, 584 F.2d 142, 147 (6th Cir.1978) (stating "The use of the words 'submit' are not the equivalent of expressing an opinion.")).

In order to be entitled to relief on appeal, the defendant must "show that the argument of the prosecutor was so inflammatory or the conduct so improper that it affected the verdict to his detriment." State v. Farmer, 927 S.W.2d 582, 591 (Tenn. Crim. App. 1996). This court must consider the following factors when determining whether the argument of the prosecutor was so inflammatory or improper to negatively affect the verdict:

> (1) the conduct complained of viewed in the light of the facts and circumstances of the case; (2) the curative measures undertaken by the court and the prosecution; (3) the intent of the prosecutor in making the improper arguments; (4) the cumulative effect of the improper conduct and any other errors in the record; and (5) the relative strength and weakness of the case.

State v. Chalmers, 28 S.W.3d 913, 917 (Tenn. 2000) (citations omitted).

As an initial matter, we note that the record clearly establishes what occurred in the trial court. Both parties' closing arguments were transcribed and included in the record on appeal. The Defendant complains of the prosecutor making the following statements during his closing argument:

> (1) Let's go over what that proof was. Officer Troutt took the stand. You saw [Officer Troutt] testify and answer questions about [sic], and I would submit to you that his testimony was credible.

> (2) He got behind the building with him from behind, saw him, and he saw him throw those items down. At that point, it becomes a different ballgame. He's seen somebody commit a crime. See[n] them in possession of illegal items. So, his testimony is credible. He has no reason to lie.

> (3) But there's several other reasons why Mr. Hampton's testimony is completely incredible. First of all, unlike Officer Troutt and Officer Shell, who are credible witnesses, who have no reason to lie about this, who have no ill will towards Mr. Hampton, who were just doing their jobs as police officers; Mr. Hampton is not a credible witness.

> (4) Lastly, Mr. Hampton's story is incredible because when he was arrested and searched, and he admitted to this, he had a large amount of currency in multiple small denominations on his person, as well as a digital scale with marijuana residue on it inside—on his person. Think about that.

(5) Ladies and gentlemen of the jury, Mr. Hampton's version of these facts is absolutely preposterous. <u>The officers' testimony was credible.</u>

The Defendant relies on <u>State v. James Thomas, Jr.</u>, No. M2014-00972-CCA-R3-CD, 2015 WL 4484888, at *7-8 (Tenn. Crim. App. July 23, 2015), for the assertion that the complained-of statements in the instant case warrant "revers[ing] a conviction based on prosecutorial vouching" following plain error review. The Defendant insists that the statements in the instant case are "nearly identical" to those in <u>Thomas</u>. In <u>Thomas</u>, the prosecutor made statements during his closing argument that the victim was "telling the truth[,]" questioned "[w]hat has [the Defendant] said that makes sense or has a ring of truth to it?", stated that the account of events given by the victim was "not a lie[,]" and implicitly stated that the defendant would not have been charged without the testifying detective's "determination that he was a credible, truthful witness." <u>Id.</u> at *7. This court ultimately reversed the defendant's convictions because of the prosecutor's statements, noting that the comments "'affected the verdict to [Defendant's] detriment.'" <u>Id.</u> at *8 (citations omitted). The Defendant also asserts that, despite the State's arguments, "this court has not always, as the State suggests, rubber-stamped a prosecutor's statements in the presence of the phrase 'I submit.'"

As relevant to the instant case, the prohibition against a prosecutor expressing his or her opinion about the truth or falsity of any testimony or evidence also prohibits him or her from "personally endorsing or vouching for or giving his or her opinion . . . the witness must stand on their own." <u>Goltz</u>, 111 S.W.3d at 7 (citations omitted). Therefore, we agree with the Defendant that the prosecutor's statements that the Defendant "was not a credible witness" whose "testimony [wa]s completely incredible" and multiple references to Officer Troutt's testimony as "credible" were improper. However, unlike <u>Thomas</u>, we cannot conclude that such statements warrant plain error relief.

Not all errors in a closing argument necessitate a new trial. When viewed in overall context, the prosecutor's statements were not so inflammatory as to require reversal. In examining the above-referenced <u>Chalmers</u> factors, we note that defense counsel reminded the jury that the Defendant "swore an oath, as did the officers, to tell the truth." Defense counsel further instructed the jury during closing arguments that they were only to use the Defendant's previous convictions "to consider his credibility." The prosecution did not offer a rebuttal closing argument. The record also reflects that the trial court instructed the jury that "[s]tatements, arguments, and remarks of counsel are intended to help you in understanding the evidence and applying the law, but they are not evidence." The trial court went on to instruct the jury that it was "the exclusive judges of the credibility of the witnesses and the weight to be given to their testimony." We generally presume that the jury has followed the trial court's instructions. See <u>State v. Butler</u>, 880 S.W.2d 395, 399 (Tenn. Crim. App. 1994). We cannot conclude that the prosecutor's comments negatively

affected the verdict and therefore cannot conclude that the Defendant's right to a fair trial was affected or that consideration under plain error is necessary to do substantial justice. The Defendant is not entitled to relief.

**III**. **Sufficiency of the Evidence**. The Defendant challenges the sufficiency of the evidence and contends that the State failed to establish that he was in constructive possession of the weapon. The State argues, and we agree, that the evidence was sufficient to support the Defendant's conviction. "Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009) (citing State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992)). "Appellate courts evaluating the sufficiency of the convicting evidence must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Wagner, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); see Tenn. R. App. P. 13(e). When this court evaluates the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Sutton, 166 S.W.3d 686, 691 (Tenn. 2005); State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence, and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court "neither re-weighs the evidence nor substitutes its inferences for those drawn by the jury." Wagner, 382 S.W.3d at 297 (citing State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997)).

As pertinent to our review, Tennessee Code Annotated section 39-17-1307(b)(1)(A) provides that a person commits an offense "who unlawfully possesses a firearm" and "[h]as been convicted of a felony involving the use or attempted use of force, violence, or a deadly

weapon." There is no dispute that the Defendant's prior convictions for aggravated burglary qualify as a felony conviction involving the use of violence and force. A person may possess contraband alone or jointly with others. State v. Richards, 286 S.W.3d 873, 885 (Tenn. 2009) (citations omitted); State v. Copeland, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984). In addition, "[p]ossession may be actual or constructive." State v. Robinson, 400 S.W.3d 529, 534 (Tenn. 2013) (citing State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001)). Constructive possession is established when a person has "'the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.'" State v. Williams, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981) (quoting United States v. Craig, 522 F.2d 29, 32 (6th Cir. 1975)). It has also been defined as "'the ability to reduce an object to actual possession.'" Id. (quoting United States v. Martinez, 588 F.2d 495, 498 (5th Cir. 1979)). Constructive possession depends on the totality of the circumstances in each case and may be established through circumstantial evidence. Robinson, 400 S.W.3d at 534 (citing Tenn. Code Ann. § 39-17-419). The mere presence of a person in an area where drugs are found is not, by itself, sufficient to support a finding of constructive possession. Id. (citing State v. Bigsby, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000)). In addition, an individual's mere association with a person in control of the drugs or the property where the drugs are found is not enough to support a finding of knowing possession. Id. (citing State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987)).

Taking the evidence in the light most favorable to the State, the proof at trial showed that JPD officers had received a tip from a confidential informant as to the location of an individual who had an outstanding arrest warrant. Officer Troutt had a photo and description of the person who was the subject of the arrest warrant. When he responded to the location, there were about 10 men standing around, including the Defendant. Officer Troutt observed the Defendant, who appeared to match the same build and clothing as the subject wanted in the arrest warrant, begin to walk away. Officer Troutt could not see the Defendant's face clearly and began to follow the Defendant, without ordering the Defendant to stop. As Officer Troutt followed the Defendant, he observed the Defendant take a firearm and a bag of marijuana from his person and throw them to the ground. Officer Troutt then detained the Defendant and determined that the Defendant was not the person wanted for arrest. Officer Troutt went to the area where he observed the Defendant throw the items to the ground and recovered a firearm and a bag of marijuana within close proximity of each other. Officer Troutt had previously observed that the area where the firearm had been thrown was free of debris. The firearm was wet and muddy, which was consistent with the weather conditions that night. Officer Troutt testified that there was no one else in the area where the firearm and marijuana was found. After arresting the Defendant, Officer Troutt determined that he had been previously convicted of a felony. Based on the above proof, a rational jury could have determined that the Defendant

exercised dominion and control over the firearm to satisfy the element of constructive possession.  Accordingly, the Defendant is not entitled to relief.

## CONCLUSION

Based on the foregoing reasoning and analysis, the judgment of the trial court is affirmed.

_____
CAMILLE R. MCMULLEN, JUDGE